**FISCHBACH AND MOORE, INC.,**
**Plaintiff-Appellant,**

v.

**CAJUN ELECTRIC POWER**
**COOPERATIVE, INC., et**
**al., Defendants-Appellees.**

No. 85–3514.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1986.

Rehearing Denied Oct. 31, 1986.

Wickwire, Gavin & Gibbs, Jon M. Wickwire, David M. Latzko, Daniel E. Toomey, Vienna, Va., McCollister, McCleary, Fazio & Holliday, William C. Shockey, Baton Rouge, La., for plaintiff-appellant.

Michael R. Allweiss, Alan D. Ezkovich, New Orleans, La., for amicus.

Schwab & Walter, John W. Schwab, Baton Rouge, La., for defendants-appellees.

Before GEE, POLITZ and GARWOOD, Circuit Judges.

## OPINION

POLITZ, Circuit Judge:

In this Louisiana diversity jurisdiction case, Fischbach and Moore, Inc. appeals an adverse summary judgment dismissing its claims against Cajun Electric Power Cooperative, Inc. and Burns & Roe, Inc. For the reasons assigned, we reverse and remand.

### Facts

In 1981, Fischbach undertook to furnish the labor, material, and equipment required for certain electrical work on a coal-fired electrical generating plant being constructed for Cajun, pursuant to drawings and specifications prepared by Burns & Roe. The contract, denominated G3–82, consisted of two agreements, one for the equipment and the other for the construction work. Fischbach's work was substantially complete on April 11, 1983 when Cajun terminated the contract.

During the summer and fall of 1983 Cajun and Fischbach discussed the sum each believed due under the contract. At that time they were about $5.5 million apart. Negotiations intensified over the next nine months. Fischbach advanced eight claims. By May 1984 three were settled and paid. Cajun rejected the remaining five, Fischbach's claims for: (1) acceleration costs, $2,035,643.67; (2) premium time, $513,709.06; (3) vendor support and start-up, $314,531.01; (4) termination costs, $130,419.10; and (5) interest, $166,128.44. These claims totalled in excess of $3 million. In addition to the three claims which were paid and the five which were rejected, the parties agreed on three items which were not part of the eight claims, namely, Fischbach's demand for the remaining retention sum under the contract, and its demand for the value of certain conduit and scrap cable.

The retention sum was undisputed, $1,052,951.45, and at a meeting on May 10, 1984, the parties agreed to payment of $39,320.25 for the cable and conduit. In accordance with their agreement, on July

12, 1984, Fischbach submitted two invoices, number 35132 for "remaining retention on Contract G3–82," in the amount of $1,052,-951.45, and invoice number 35130 for "conduit," $30,320.25, and "scrap cable," $9,000. These two invoices totalled $1,092,271.70.

By letter dated July 31, 1984, Cajun sent a check to Fischbach for $1,092,271.71, one penny more than the total of the two invoices. The stub attached to the check described the two July 12, 1984 invoices by date, number, and the exact agreed amount. These references appeared immediately below the notation: "The attached check is in payment of items described below." Nothing other than the two invoices was listed.

The transmittal letter contained two different statements about the enclosed check. As they appear in the letter, these stated:

> The attached check includes the final retention and the agreed upon amount for conduit remaining in bank and F & M [Fischbach] scrap sold by Cajun.

> The check constitutes full and final settlement of any obligation or claims which F & M has asserted or may assert in the future concerning Contract G3–82.

Fischbach received the letter and enclosed check, which it deposited on August 6, 1984. On that same day Fischbach wrote Cajun stating:

> We have received your check No. 34529 dated July 27, 1984 in the amount of $1,092,271.71.

> As stated on the stub attached to the check, this amount represents only the total amounts due for retention on Contract G3–82 and for the cable scrap and the conduit remaining in the bank. Since this amount is currently due and payable from CEPCO [Cajun] to Fischbach and Moore, Inc., we are accepting the check in satisfaction of these obligations. We do not, however, accept this check in satisfaction of any other claims by Fischbach and Moore, Inc. against CEPCO.

> \* \* \* \* \* \*

Since CEPCO's check includes only the correct amount due for retention, scrap and conduit, the check cannot possibly constitute "full and final settlement" of the other previously submitted but as yet unpaid claims.

Fischbach and Moore, Inc. accepts CEPCO's check as payment only of the amounts and invoices stated on the check stub, and with a full reservation of Fischbach and Moore, Inc. rights to payment of the other, previously submitted claims.

Thereafter, Fischbach pressed its remaining five claims. Cajun denied liability and the instant suit was filed. Ultimately, after answering, Cajun and Burns & Roe moved for summary judgment, asserting that there were no genuinely disputed material facts and that as a matter of law Fischbach's acceptance of the check foreclosed its claims.

Following a hearing, the district court granted defendants' motion and dismissed the complaint. Concluding that there is a genuine issue as to the intent of the parties, circumscribing the use of the summary judgment procedure, we reverse and remand for trial.

## Analysis
### Standard of Review

The party seeking summary judgment must establish: (1) that no genuine dispute hovers over any material fact, and (2) entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Galindo v. Precision American Corp.*, 754 F.2d 1212 (5th Cir. 1985); *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983). In applying these standards, the trial court is to draw the inferences most favorable to the party opposing the motion. *Harrison v. Byrd*, 765 F.2d 501 (5th Cir.1985). The appellate court does likewise. *John v. State of Louisiana*, 757 F.2d 698 (5th Cir.1985); *McCrae v. Hankins* 720 F.2d 863 (5th Cir.1983). Of particular consequence herein, summary judgment is inappropriate where there is a genuine disagreement as to the reasonable inferences to be drawn from undisputed facts. In *Winters v. Highlands Ins. Co.*, 569 F.2d 297, 299 (5th Cir.1978) (citations omitted), we observed: "A summary judgment may be improper even though the

basic facts are undisputed if the parties disagree regarding the material factual inferences that properly may be drawn from these facts."

The non-moving party cannot establish a genuine issue of material fact merely with allegations contained in pleadings. *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986); *Parsons v. Ford Motor Co.*, 669 F.2d 308 (5th Cir), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). In the case at bar, we find more. For example, there are the variances between the two sentences in the letter of transmittal, the variance between one sentence in that letter and the recitation on the check stub, and the attestations in the affidavits of Paul Murphy, president of Fischbach's southern division, and Ted Walston, Jr., Fischbach's senior contract administrator. These provide "significant probative evidence demonstrating the existence of a genuine fact issue," *Parsons*, 669 F.2d at 313.

The intent of the parties is an essential issue in the resolution of the present contractual dispute. In deciding whether the use of the summary judgment vehicle is appropriate we must consider not only those principles relating to summary judgments, but those relating to contract formation. *See generally Charbonnages De France v. Smith*, 597 F.2d 406, 414–16 (4th Cir.1979). Summary judgment is not appropriate "when a contract is ambiguous and the parties' intent presents a genuine issue of material fact." *Southern Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir.1986). *See also Impossible Elec. Tech., Inc. v. Wackenhut Protective Systems*, 669 F.2d 1026 (5th Cir. 1982) (holding that summary judgment was not the proper vehicle for arriving at the conclusion of whether or not an oral contract had been confected); *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 682 (D.C.Cir.

1985) ("[W]hen the parties' intent is 'wholly unambiguous' on the face of the agreement, disposition on a motion for summary judgment may be appropriate.... When, however, the language is unclear and the search for intent extends beyond the four corners of the agreement, the intended meaning of the contract is a disputed and, necessarily, material question of fact and summary judgment is improper").

*Accord and Satisfaction*

The common law doctrine of accord and satisfaction embraces the discharge of an obligation by a debtor rendering, and a creditor accepting, performance different from that the creditor claims due. This concept, at least as it relates to the situation where a debtor tenders a lesser undisputed amount in payment of a greater disputed claim, was incorporated into the law of Louisiana by the Supreme Court of Louisiana in *Berger v. Quintero*, 170 La. 37, 127 So. 356 (1930).[1] An accord and satisfaction is a contract, albeit a special kind, terminating a dispute between the parties over obligations claimed due under a previous contract.[2] It is subject to the rules governing contracts. As Professor Saul Litvinoff, a leading commentator on Louisiana civil law has observed: "An accord is entered into through the same process as any other contract. Thus, the words and acts of the parties ... have to be interpreted in order to ascertain whether there was sufficient offer and acceptance." S. Litvinoff, 6 *Louisiana Civil Law Treatise: Obligations I* (1969), § 384, at 648. Professor Litvinoff's observations are fully supported by Louisiana precedents. *See, e.g., RTL Corp. v. Manufacturers Enterprises, Inc.*, 429 So.2d 855, 857 (La.1983) ("whether the parties altered their original contract or entered a transaction or compromise depends on whether there was mutual consent"); *Charles X. Miller, Inc. v. Oak Builders, Inc.*, 306 So.2d 449, 451 (La.App.

---

**1.** Louisiana's contract law on formation, performance, satisfaction, and termination applies in this case.

**2.** This case arose under the regime of the Civil Code of 1870. La.Civ.Code art. 1901 (1870) provided that binding conventional obligations

"can not be revoked, unless by mutual consent of the parties." *See also* La.Civ.Code art. 1983 (1985) ("Contracts have the effect of law for the parties and may be dissolved only through consent of the parties or on the grounds provided by law.").

1975) (the doctrine of estoppel by accord and satisfaction "is grounded on basic contractual principles of offer and acceptance").

Three elements are commonly declared to be essential to the confections of a valid accord and satisfaction: (1) a disputed claim, (2) the debtor's tendering of a sum less than that claimed by the creditor, and (3) the creditor's acceptance of the payment. *Charles X. Miller, Inc.; Young v. White Stores, Inc.*, 269 So.2d 266 (La.App. 1972); *Eppling v. Jon T Chemicals, Inc.*, 363 So.2d 1263 (La.App.1978). More recent cases have underscored the imperative of determining the mutual consent of the parties, an essential issue of fact. As the distinguished commentator has observed:

Where it is necessary to determine whether a certain performance rendered by the obligor, be it a payment in money, or by check . . ., was tendered to the creditor in such a manner that he knew . . . that it was in full satisfaction of his claim, the question is one of fact. . . . S. Litvinoff, *supra*, § 384, at 649. Louisiana jurisprudence contains ample support for this assessment. The cases from all of Louisiana's five courts of appeal, a representative selection of which are noted in the margin,[3] teach that mutual consent is an absolute requisite to the formation of a contract of accord and satisfaction, and that the intent of the parties is a question of fact to be resolved by the trier-of-fact.

Under vintage principles of Louisiana law, a conventional obligation does not come into fruition until there has been a focusing of two minds upon the same object with the manifested intent to agree thereon.[4]

■ Given the run-of-the-mill case of accord and satisfaction in Louisiana, in which the tender and acceptance of a check for a lesser sum as purported full payment has been held to constitute a discharge of the

---

**3.** *See, e.g., Cowley Corp. v. Shreveport Packing Co.*, 440 So.2d 1345, 1352 (La.App. 1983) (citations omitted) ("As in any other contract, acceptance of the offer must be by informed consent. . . . The creditor must fully understand and be aware that if payment is accepted, the claim will be deemed to have been paid in full. . . . While the acceptance and cashing of a check for an amount less than that claimed when tendered as full payment constitutes accord and satisfaction and extinguishes the entire debt, the question of whether the check had been tendered and accepted as full payment is a matter of fact"), *writ denied*, 444 So.2d 122 (La.1984); *Spalitta v. Hartford Fire Ins. Co.*, 428 So.2d 824, 826 (La.App.1983) ("The creditor must be fully aware the tender is offered as final settlement in the matter"); *McClelland v. Security Industrial Ins. Co.*, 426 So.2d 665, 670 & n. 2 (La.App. 1982) ("Essential to a valid accord and satisfaction is that the creditor understands that the payment is tendered in full settlement of the dispute. . . . By requiring a meeting of the minds between the parties as to exactly what they intend and requiring that the creditor understands that the payment is tendered in full settlement, the doctrine of accord and satisfaction is identical to its more formal cousin, the doctrine of compromise. La.C.C. arts. 3071, 3073 and 3079 . . ."), *writ denied*, 430 So.2d 94 (La.1983); *Adams v. Sconza*, 380 So.2d 679, 680 (La.App.1980) ("One element necessary to prove accord and satisfaction is a showing that the creditor understands the payment is tendered in full settlement. . . . Although the [creditor's] action here [viz., her deletion of the "full settle-

ment" words on the check and her addition of "reserved rights" to that check before negotiating it] strongly suggests she was aware of the nature of the tender, [the debtor's] notation on the check did not make it clear so that 'any reasonable reader would fully understand the check was tendered in full payment of all claims.' [*Jon-T Chemicals,*] 363 So.2d at 1266. There is no real proof that [the creditor], at least, understood this"); *Pieri v. DiMaggio*, 331 So.2d 59, 60 (La.App.1976) ("[T]he creditor must understand that if payment is accepted, the claim will be deemed to have been paid in full. . . . [In this case], there existed a factual issue as to whether the parties seriously regarded the cited language as having any binding effect upon them"); *Antoine v. Elder Realty Co.*, 255 So.2d 625, 629 (La.App. 1971) ("To constitute an accord and satisfaction, the creditor must understand that if the payment is accepted, the claim will be deemed to have been paid in full").

**4.** *See, e.g., Holtzman v. Millaudon*, 18 La.Ann. 29 (La.1866); *Stockton v. Firemen's Ins. Co.*, 33 La.Ann. 577, 581 (La.1881) ("To convert a proposition into a contract, it is not sufficient to show strong probability that it would have been accepted: Acceptance actual, final and irrevocable must be proved"); *Jones v. Janes*, 156 La. 715, 101 So. 116, 117 (1924) ("A contract is incomplete unless there be a meeting of the minds of the parties upon the common ground of a mutual understanding of facts and of subject-matter. . . . Offer and assent must coincide, and the

greater obligation, it is understandable how one could conclude that any creditor accepting a payment carrying the trappings of "payment in full," automatically forfeits the greater claim. But that *per se* resolution is not the prevailing Louisiana rule. Not every remittance and negotiation of a check tendered with a "full settlement" notation will constitute an accord and satisfaction. The creditor must understand that upon acceptance of the tendered payment the claim will be deemed to have been paid in full. *See, e.g., RTL Corp. v. Manufacturer's Enterprises, Inc.,; McClelland v. Security Industrial Ins. Co.; Adams v. Sconza; and Antoine v. Elder Realty Co.* In each of these cases, despite the negotiation of a check tendered "in full settlement," for want of mutual consent the court found no accord and satisfaction.

Because of our resolution of this appeal, we do not now reach Fischbach's argument that the incorporation of provisions of the Uniform Commercial Code into Louisiana law, specifically La.R.S. 10:1–207 (1983), provides it with succor. We find no case in which a Louisiana court has addressed this contention and applied this statute, although in several cases, including some we have cited herein, the issue was present. *See* Hersbergen, *Developments in the Law, 1983–84, Banking Law: The "In Full Payment" Check,* 45 Louisiana Law Review 231 (1984). As an Erie court, we are reluctant to be the first to plow that furrow when not absolutely necessary.

■ We conclude that summary judgment was inappropriately entered. It cannot be said that there is no genuine dispute over the issue of the intent of Fischbach in accepting the proffered check for a sum which exceeded by one penny the admittedly agreed to and invoiced-sum for retainage, conduit, and cable, as satisfaction for its $3 million-plus in outstanding claims. Perhaps on the trial of this case the trier-of-fact may find the requisite intent. On that we express no opinion whatsoever. However, for purposes of summary judgment, the facts of record and the reasonable inferences which may be drawn from those facts, including the variances between the notations on the check stub and the statements in the transmittal letter, and the averments of Fischbach's affiants, all lead to the conclusion that the material facts are sufficiently in dispute to prohibit this summary procedure.[5]

The judgment of the district court is REVERSED, and the matter is REMANDED for further proceedings consistent herewith.

result must be a complete obligation"); *Liberty Personnel, Inc. v. Children's Hospital,* 487 So.2d 518, 521 (La.App.1986) (citations omitted) ("LSA–C.C. Art. 1927, formerly LSA–C.C. Art. 1798 (1870), provides that a contract is formed by the consent of the parties established through offer and acceptance. The will of the parties must unite on the same point. . . . Contracts are founded on parties' agreements, and where they misunderstand each other there is no contract").

5. Although the question of the propriety of summary judgment is resolved by recourse to federal law, we note that the Louisiana courts would reach the same conclusion we have today. In *Hall v. Management Recruiters, Inc.,* 332 So.2d 509, 511 (La.App.1976), an accord and satisfaction case, the court stated that "a summary judgment . . . is rarely an appropriate procedure for determining intention." *See also, Lorio v. Safeco Ins. Co.,* 316 So.2d 744 (La.App.) (declaring summary judgment inappropriate in a case of transaction or compromise), *writ denied,* 318 So.2d 52 (La.1975).