IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 12, 2007

Charles R. Fulbruge III
Clerk

No. 06-30528

FEDERAL TRADE COMMISSION

 Plaintiff - Appellee

CLAUDE C LIGHTFOOT, JR, for the corporation, various
entities and property in which America First Communications,
Inc, Voice of America, Inc and Namer, Inc, own or control
an interest

 Receiver - Appellee

 v.

ROBERT NAMER; NAMER INC; AMERICA FIRST COMMUNICATIONS
INC;  VOICE OF AMERICA INC;

 Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:89-CV-1740

Before JONES, Chief Judge, and STEWART and CLEMENT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Robert Namer ("Namer"), along with Namer, Inc., America First Communications, Inc., Voice of America, Inc., and other corporate entities (collectively, the "Corporations") appeal the district court's orders of April 5, 2006, April 26, 2006, and May 26, 2006, affirming ten orders of the magistrate judge and denying Namer's motion for recusal of the district court judge. We AFFIRM.

## I. FACTS AND PROCEEDINGS

In 1989, the Federal Trade Commission ("FTC") filed a lawsuit against Robert Namer and National Business Consultants, Inc. ("NBC"), alleging violations of the Federal Trade Commission Act ("the Act"), 15 U.S.C. § 45(a)(1)-(2), and the "Franchise Rule," 16 C.F.R. Part 436. The Franchise Rule proscribes a variety of unfair or deceptive acts and practices by franchisors or franchise brokers in connection with the offering and sale of franchises and business opportunity ventures. See 16 C.F.R. Part 436. After a bench trial, the court found that "Namer was conducting a franchise operation in NBC and that Namer had violated the FTC's Franchise Rule by misrepresentations and omissions" to potential franchisees. FTC v. Nat'l Bus. Consultants, Inc., No. 89-1740, 1990 WL 32967, at *1 (E.D. La. Mar. 20, 1990). The court granted a permanent injunction, restraining Namer and NBC from further violations of the Act and the Franchise Rule. Id. at *9. In November 1991, the district court entered judgment against Namer and NBC in the amount of $3,019,377.00.

Despite efforts by the FTC to enforce the judgment, Namer and NBC never paid the debt. In July 2002, the FTC moved to conduct a judgment debtor examination, in accordance with the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C §§ 3001–3308, and Rule 69(a) of the Federal Rules of Civil Procedure to discover whether Namer had any further assets that could be acquired to satisfy the judgment. After examination, the district court found that Namer had "violated the [FDCPA] by purposefully transferring income and

assets to Namer, Inc., America First Communications, Inc., Voice of America, Inc., and by incurring debt and making loans to Friends of Robert Namer calculated to hinder, delay and avoid collection of the judgment against him." FTC v. Namer, No. 89-1740, 2003 WL 193503, at *3 (E.D. La. Jan. 27, 2003). On April 8, 2003, the district court amended its judgment, adding the Corporations as defendants and judgment debtors.[1]

By May 2005, over thirteen years after the entry of judgment, Namer and the Corporations had paid only $140,149.79 toward the judgment. After the FTC became convinced by Namer's statements and actions that he would continue his attempts to evade payment of the debt,[2] it moved to appoint a receiver to account for Namer's income and to manage and liquidate his assets and those of the Corporations. Pursuant to 28 U.S.C. § 3203(e), the district court appointed Claude Lightfoot ("Receiver") on May 31, 2005 to assume complete control over Namer's assets and the Corporations themselves.

Together, the FTC and the Receiver continued efforts to enforce the judgment.[3] Three recent orders of the district court ruling on numerous issues

---

[1] Namer and NBC appealed the decision, but this Court affirmed the district court's order. FTC v. Nat'l Bus. Consultants, Inc., 376 F.3d 317, 318 (5th Cir. 2004), cert. denied, 544 U.S. 904 (2005).

[2] The record reveals at least three occasions where the district court revoked fraudulent transfers of assets that Namer had made to his children and other insiders. To further delay payment of the judgment, Namer filed a separate lawsuit against the Receiver in May 2006, alleging defamation and theft. The district court dismissed the case for failure to state a claim and barred Namer and his colleagues from filing further complaints or proceedings, citing his "calculated abuse of the administration of justice" and stating that "this nonsensical abuse must come to an end." Namer v. Lightfoot, No. 06-2511, slip op. at 1 (E.D. La. July 25, 2006), appeal docketed, No. 06-30906 (5th Cir. Aug. 31, 2006). In June 2006, prior to the district court's order prohibiting further frivolous filings, the Corporations and a host of Namer's colleagues also filed suit against the Receiver, alleging negligence and breach of fiduciary duty. The district court dismissed the lawsuit for failure to state a claim. Nat'l Bus. Consultants, Inc. v. Lightfoot, No. 06-3191, slip op. at 1 (E.D. La. Aug. 2, 2006), appeal docketed, No. 06-30896 (5th Cir. Aug. 30, 2006).

[3] In addition to pursuing satisfaction of the judgment through these proceedings, the Receiver filed a separate lawsuit in October 2006, seeking the revocation of a fraudulent

are the focus of this appeal.[4]  We find that Namer's arguments lack merit, making this appeal indicative of his repeated and consistent attempts to delay the enforcement of the judgment against him.

## II.  STANDARD OF REVIEW

This Court reviews de novo a district court's conclusions of law, and its findings of fact are reviewed for clear error.  Rimade Ltd. v. Hubbard Enters., Inc., 388 F.3d 138, 142 (5th Cir. 2004).  We also review the denial of a motion to recuse for abuse of discretion.  Andrade v. Chojnacki, 338 F.3d 448, 454 (5th Cir. 2003) (citing Trevino v. Johnson, 168 F.3d 173, 178 (5th Cir. 1999)); United States v. Merkt, 794 F.2d 950, 960 (5th Cir. 1986).

## III.  DISCUSSION

### A.    Scope of Jurisdiction

The parties do not dispute the jurisdiction of this Court pursuant to 28 U.S.C. § 1291 to review all appeals from final judgments of district courts.  We

---

transfer of real property from America First Communications to a third-party company.  The district court adopted the magistrate judge's report and recommendations, finding that Namer intended to defraud the FTC to avoid the judgment against him and granting summary judgment to the Receiver.  Lightfoot v. Miss Lou Props., L.L.C., No. 05-3776, slip op. at 1 (E.D. La. Oct. 11, 2006), appeal docketed, No. 06-31210 (5th Cir. Nov. 27, 2006).

[4] The district court's order of April 5, 2006 adopted two of the magistrate judge's reports and recommendations, granting the Receiver's motion to approve auction and bidding procedures for the sale of radio station assets and the form of an asset purchase agreement, and denying the Receiver's motion to exclude Namer from participating in depositions.  The district court's April 5, 2006 order also denied Namer's motion for Judge Beer's recusal.  The district court's April 26, 2006 order affirmed the following six orders of the magistrate judge: (1) denial of Namer's motions to vacate the order to appoint a receiver and to declare personal property exempt from seizure, (2) denial of Namer's motion to dismiss on the basis of accord and satisfaction and the Corporations' motion for an accounting, (3) denial of Namer's motion to remove the attorney for the Receiver, (4) denial of Namer's motion for stay of seizure and for access to all files and tapes, (5) grant of the Receiver's motion to appoint a certified public accountant to assist the Receiver, and (6) denial of Namer's motion for relief from judgment pursuant to Rule 60(b).  The district court's May 26, 2007 order affirmed the magistrate judge's order denying enrollment of Cary J. Deaton as counsel to Namer, Inc., America First Communications, Inc., and Voice of America, Inc.  Namer timely appealed the district court's orders.

must, however, consider the scope of our jurisdiction in this case sua sponte. See Okpalobi v. Foster, 190 F.3d 337, 343 (5th Cir. 1999).

"Rule 3(c) of the Federal Rules of Appellate Procedure requires that the notice of appeal specify the order from which the appeal is taken." Hinsley v. Boudloche (In re Hinsley), 201 F.3d 638, 642 (5th Cir. 2000). "Nevertheless, a policy of liberal construction of notices of appeal prevails . . . [when] the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party." Id. (internal quotation omitted). In his original and amended notices of appeal, Namer stated his intent to appeal the district court's postjudgment orders of April 5, 2006, April 26, 2006, and May 26, 2006. But he raises two issues for appeal in his brief and reply brief that are outside the scope of this proceeding and are not enumerated in his notices of appeal, claiming that the district court's bar on future filings in parallel lawsuits filed by Namer and the Corporations, see supra note 2, prohibits him from filing effective, timely appeals on rulings in those cases.

The reality is that the three cases involving Namer, although obviously related, were never consolidated by the district court. Further, this Court has docketed appeals in both of the parallel cases filed by Namer and the Corporations. Therefore, because some of the issues Namer raises for appeal do not arise from the case now before this Court, and the FTC and the Receiver would be significantly prejudiced if Namer is allowed to advance those issues at this time, this Court will entertain only those appellate arguments arising from this case and arising from the district court's orders of April 5, 2006, April 26, 2006, and May 26, 2006 listed in the notices of appeal. Specifically, this Court will not consider Namer's argument that the district court abused its discretion and violated Namer's due process rights when it prohibited all future frivolous filings in Namer v. Lightfoot, No. 06-2511, slip op. at 1 (E.D. La. July 25, 2006), appeal docketed, No. 06-30906 (5th Cir. Aug. 31, 2006). Nor will this Court

consider Namer's argument that the district court abused its discretion in allowing the Receiver to seize property that Namer argues is leveraged beyond its value. This argument appears to be a summary of the Corporations' claims in National Business Consultants, Inc. v. Lightfoot, No. 06-3191, slip op. at 7–14 (E.D. La. June 19, 2006), appeal docketed, No. 06-30896 (5th Cir. Aug. 30, 2006).

B.      District Court's Order of April 5, 2006

        1. Motion to grant auction and bidding procedures

The district court adopted the magistrate judge's report and recommendation granting the Receiver's motion to approve auction and bidding procedures for Namer's radio station assets. Although Namer expressly stated his intent to appeal this decision in his notice of appeal, neither party briefed the issue. Because "[i]nadequately briefed issues are deemed abandoned," this Court will not consider this issue. United States v. Charles, 469 F.3d 402, 408 (5th Cir. 2006).

        2. Judicial recusal

The district court also denied Namer's motion of March 31, 2006, requesting Judge Peter Beer to recuse himself pursuant to 28 U.S.C. § 455. Before evaluating Namer's individual complaints regarding Judge Beer's conduct, it is important to provide context by examining the backdrop of events in the record that have occurred over the course of the last eighteen years.

This litigation started in 1989 and was assigned to Judge Veronica Wicker. During Judge Wicker's oversight of the case, Namer filed two motions to recuse the judge, resulting in the case's reassignment to Judge Charles Schwartz, Jr. in July 1991.[5] Judge Schwartz presided over the case until September 1992,

---

[5] In her order recusing herself from this case, Judge Wicker wrote:

It has been recently brought to the undersigned's attention that Robert Namer . . . has used on a continuing basis a local radio station's "talk" show to unjustly and maliciously attack the integrity and impartiality of the Court. . . . While the

when the case was reassigned to Judge Beer, who commented on the circumstances surrounding both of these recusals:

> This case has a long and acrimonious history starting with Namer's attacks on the Honorable Veronica Wicker and in like manner, upon the Honorable Charles Schwartz, Jr. The Court will spare the record of the details of those attacks, except to say that in each instance, they resulted in the judge taking himself or herself out of the case and sending it to the clerk's office for re-allotment.

FTC v. Nat'l Bus. Consultants, No. 89-1740, 2003 WL 1797891, at *2 (E.D. La. Apr. 3, 2003). From January 1993 to March 2006, Namer moved to recuse Judge Beer from the case four times, alleging that the judge had verbally abused him and threatened him and his family legally. In response to Namer's third request for recusal, Judge Beer wrote:

> It is the resolve of this Court to see this matter through, fairly and evenhandedly, all other considerations to the contrary notwithstanding. I have not and will not waver from this commitment nor will I let the impartial and evenhanded administration of justice be hamstrung by calculated personal attacks against my family and myself. Part of the overall responsibility of serving as United States District Judge is to do one's job fairly and impartially. This is what I have done and will continue to do.

FTC v. Nat'l Bus. Consultants, Inc., No. 89-1740, 2003 WL 1797891, at *2 (E.D. La. Apr. 3, 2003). Judge Beer denied Namer's fourth motion to recuse on April 5, 2006 without a hearing. It is that motion that is at issue before us now.

---

undersigned has no personal prejudice towards any litigant in this or any other matter before her, it is conceivable that defendant Namer's personal and highly publicized vendetta, no matter how unjust or malicious, could cause needless concern for some reviewing authority.

FTC v. Nat'l Bus. Consultants, Inc., No. 89-1740, slip op. at 1–2 (E.D. La. July 23, 1991). Indeed, although Namer did not hide the fact that he broadcasted his concerns about Judge Wicker, he painted his actions in a different light: "[D]efendants sought relief by exposing Judge Wicker's prejudicial and unconstitutional actions to the public in a two hour radio broadcast on May 27, 1991."

A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge must also disqualify himself under various circumstances enumerated in § 455(b), including situations "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Id. § 455(b)(1).

We have established three guidelines for interpreting § 455. See Andrade v. Chojnacki, 338 F.3d 448, 454–55 (5th Cir. 2003). First, we must use an objective standard for evaluating bias. Id. (citing Vieux Carre Prop. Owners, Residents & Assocs. v. Brown, 948 F.2d 1436, 1448 (5th Cir. 1991)). Next, our "review should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." Id. at 455 (citing Sao Paulo State of Federative Rep. of Brazil v. Am. Tobacco Co., 535 U.S. 229, 232–33 (2002)). Lastly, we must consider the origin of a judge's alleged bias, otherwise known as the application of the "extrajudicial source rule." Id. (citing Liteky v. United States, 510 U.S. 540, 555 (1994)). "As articulated by the Supreme Court, this rule more or less divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal[.]" Id. To summarize, in order to demonstrate that the district court's refusal to recuse constituted an abuse of discretion, Namer must "(1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial' origin, (2) place the offending event into the context of the entire trial, and (3) do so by an 'objective' observer's standard." Id. We find that he fails to satisfy these standards.

Namer makes numerous claims that he contends establish Judge Beer's partiality and bias. He claims that Judge Beer made derogatory and biased remarks about Namer in courtroom proceedings; accused Namer of participating in criminal activity and making inflammatory statements on the radio; granted

ex parte motions filed by the FTC; reversed the magistrate judge's order to return Namer's vehicle; made insulting comments about Namer's religion in a written order; refused to have an ex parte conversation with Namer in chambers; and used his position in this case to gain vengeance against Namer and a business colleague, Keith Rush.[6]

Most of these claims arise from "intrajudicial" sources which do not ordinarily furnish the basis for recusal. Liteky, 510 U.S. at n.3. In fact, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 550–51. Therefore, Namer's claims regarding biased and derogatory remarks made by Judge Beer in courtroom proceedings, even if credible, require a more deferential review and do not fall within the range of behavior that would make fair judgment impossible.[7] Indeed, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. Id. at 555–56.

---

[6] Since the case was assigned to Judge Beer in September 1992, Namer has moved four times to recuse the judge: January 1993, January 2003, April 2003, and March 2006. Judge Beer took the first three motions under submission and later denied each one. In his latest motion to recuse, Namer not only alleged behavior of the judge occurring since April 2003, the date of the third motion to recuse, but also actions dating back to September 1992. This Circuit recognizes that § 455 motions must be made timely; indeed, "it is well-settled that—for obvious reasons—one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1410 (5th Cir. 1994). Arguably, the district court and this Court should not consider Namer's arguments regarding the judge's alleged behavior occurring before April 2003 because those bases for recusal have been denied in prior motions and are now untimely. The alleged behavior that may warrant consideration at this time is that which has transpired from April 2003 to March 2006 and includes signing various orders adverse to Namer, refusing to have an ex parte meeting with Namer in chambers, and refusing to grant Namer an evidentiary hearing on his latest motion to recuse the judge.

[7] Most of Namer's assertions regarding Judge Beer's behavior reference and rely upon an unsworn, self-serving affidavit in the record from January 2003, instead of specific entries in courtroom transcripts or court orders.

Many of Namer's complaints can be classified as adverse rulings that also do not establish personal bias. The Supreme Court has explained:

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

Id. at 555 (internal citation omitted). Therefore, Namer's claims that orders ruling in favor of the FTC or the Receiver reveal Judge Beer's bias against him are without merit.

Namer claims that he went to Judge Beer's chambers without notice on June 22, 2005 "to clarify his perceptions of the Judge's actions and to clear any misperceptions the Judge may have about him." He argues that Judge Beer was rude to him and that the judge's pointed and adamant refusal to meet with him provides evidence of the judge's partiality. The rules governing judicial ethics prohibit judges from engaging in substantive ex parte communications concerning pending matters. MODEL CODE OF JUDICIAL CONDUCT R. 2.9 (2007). Accordingly, we find this complaint is without merit.

Namer's final allegations of Judge Beer's bias are also insufficient. Namer claims that "he has been advised that Judge Beer will reverse any relief he gets from the Magistrate," and that "he has been advised that Judge Beer has stated that he wants to make sure Namer will never be able to broadcast or earn a living in New Orleans." Further, Namer contends that Judge Beer had ulterior motives for closing Namer's radio station that were "compounded by a decades' old vendetta against a long time broadcaster who worked at [Namer's radio station], Keith Rush, who . . . contradicted a statement [that Judge Beer] made during a political race." Namer, however, has not substantiated these claims nor

demonstrated that Judge Beer's alleged actions were of extrajudicial origins by an objective observer's standard.

In addition to Namer's claims for recusal, he also argues that he should have been afforded a hearing to present evidence of Judge Beer's bias. We note that a party filing a motion for recusal does not have an automatic right to establish a record in open court or participate in an evidentiary hearing, nor does a need even exist for an evidentiary hearing if the facts presented by a party seeking recusal are insufficient on the face of the motion. See United States v. Barnes, 909 F.2d 1059, 1072 (7th Cir. 1990). "[S]ection 455 must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (internal quotation omitted). A review of the record indicates that Namer's claims for recusal are either grossly unsubstantiated or, being of intrajudicial origin, do not qualify as a foundation for a finding of bias. We find that all of Namer's arguments for recusal are misplaced; therefore, we find that the district court did not abuse its discretion when it denied Namer an evidentiary hearing on the motion to recuse.

Lastly, we highlight the fact that § 455 "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." Id. (citing United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986); In re United States, 666 F.2d 690, 694 (1st Cir. 1981)). We find it quite clear from the record that Namer has used the recusal statute to forum-shop and delay the enforcement of the judgment against him. But as Judge Beer, paying homage to François Rabelais, succinctly instructed: "Let down the curtain; the farce is over." Namer v. Lightfoot, No. 06-2511, slip op. at 2 (E.D. La. July 25, 2006), appeal docketed, No. 06-30906 (5th Cir. Aug. 31, 2006).

C.    District Court's Order of April 26, 2006

1. Motions to vacate the order appointing a receiver and to declare personal property exempt from seizure

In December 2004, as part of the FTC's ongoing effort to satisfy the judgment against Namer, the district court granted the FTC's request for a writ of continuing garnishment to be served upon a Mississippi corporation, CopyTek-Tronics, Inc. ("CopyTek"), for any funds due or to become due to either Namer or the Corporations.  CopyTek answered the garnishment interrogatories in January 2005, indicating no funds were due, but reporting a business relationship with Voice of America, Inc., one of the Corporations.  After notice of service of the writ of garnishment upon CopyTek, Namer and the Corporations filed requests for hearing, raising numerous issues concerning the FTC's attempts to obtain satisfaction of the judgment.  Namer and the Corporations did not challenge the FTC's compliance with any statutory requirement for the issuance of the postjudgment remedy granted under the FDCPA, 28 U.S.C. § 3202(d).  Rather, their claims concerned the validity of various claims of exemption by the judgment debtors.  After an evidentiary hearing, the magistrate judge ruled on June 8, 2005 that the only property at issue was any amount that CopyTek owed to Voice of America, Inc.  This resulted in two findings.  First, the exemptions that Voice of America, Inc. sought to claim were not applicable to corporations; therefore, it could not cite any failure by the FTC to comply with the statutory requirements of the FDCPA.  Second, Namer's contentions concerning himself and his personal property were irrelevant to the proceedings.[8]

---

[8] Although unnecessary, the magistrate judge considered a few of Namer's issues raised at the hearing and advised him that as long as he chose to perform services through the Corporations, the exemption statutes will not prevent the FTC's seizure of anything owed to the Corporations because the exemptions only apply to natural persons, not corporations.

Meanwhile, on May 31, 2005, the FTC applied for writs of execution concerning assets of Namer and the Corporations. At the same time, the FTC sought the appointment of a Receiver to avoid any dissipation of assets. See supra notes 2-3. The district court granted this request on the same day. These applications had no bearing or relationship to the hearing regarding the garnishment proceeding involving CopyTek. On June 22, 2005, Namer moved to amend the order appointing a receiver, and on June 28, 2005, he moved to vacate the order. He argued that the FTC's position regarding the pursuit of a garnishment against CopyTek judicially estopps it from pursuing the appointment of a receiver. Namer challenged the actions of the FTC in seeking an ex parte order for the appointment of a receiver and in failing to disclose its intentions to him during the evidentiary hearing on the CopyTek garnishment. The magistrate judge denied both motions on the basis that she lacked the authority to modify or vacate a district court's order, and Namer did not choose to file the motions for hearing before the district court.[9]

Namer now claims that the district court erred in allowing the FTC to seize and sell his assets and those of the Corporations without requiring it to follow the mandates of the FDCPA. He claims that his rights under the FDCPA were violated in four ways: (1) the FTC failed to make a demand for payment upon the Corporations before filing an application for a writ of garnishment to be served upon CopyTek, as required by 28 U.S.C. § 3205(b)(1)(B); (2) the district court failed to schedule a hearing on the writ of garnishment against CopyTek within ten days or as soon thereafter as practicable; (3) the FTC violated the stay imposed by 28 U.S.C. § 3014 by obtaining an ex parte order appointing the

---

[9] Although the magistrate judge denied the motions for lack of authority to review the district court's order, she did comment on the merits of Namer's claim, finding that the pursuit of a garnishment from a third party and the request for a receiver were not inconsistent legal positions.

Receiver; and (4) the FTC failed to give notice of its motion to appoint the Reciever. We find these claims to be without merit.

The general requirements for obtaining a writ of garnishment under the FDCPA state that the FTC must list on the application "the nature and amount of the debt owed and the facts that not less than 30 days has elapsed since demand on the debtor for payment of the debt was made and the judgment debtor has not paid the amount due." 28 U.S.C. § 3205(b)(1)(B). The record, however, indicates that Namer and the Corporations did not raise this issue initially before the magistrate judge. Although they requested an evidentiary hearing to address claims of exempt property, they did not challenge the FTC's compliance with the FDCPA's statutory requirements. This Circuit has held that a party who objects to a magistrate judge's report waives any legal arguments that were not made first before the magistrate judge. See Cupit v. Whitley, 28 F.3d 532, 535 & n.5 (5th Cir. 1994). Therefore, this argument is waived.

Section 3205(c)(5) mandates that "[t]he court shall hold a hearing within 10 days after the date the request is received by the court, or as soon thereafter as is practicable," should either party object to the answers to the garnishment interrogatories submitted by the garnishee, i.e., CopyTek. The requests by Namer and the Corporations for a hearing regarding CopyTek's garnishment interrogatory answers were filed on February 11, 2005. Because "[t]he party objecting shall state the grounds for the objection and bear the burden of proving such grounds," id., a series of answers and replies between Namer and the FTC followed. On April 7, 2005, the magistrate judge granted the request for the hearing and scheduled it for April 28, 2005. Both parties moved simultaneously for a continuance, and so the hearing was continued and held on June 1, 2005. This Court finds that no prejudice resulted from the continuance; indeed, both parties requested that the date be moved. We find that, although the hearing

did not take place within ten days, it occurred "as soon thereafter as [was] practicable." Therefore, Namer's alleged violation of the FDCPA is without merit.

Namer's next claim pertains to the stay imposed by 28 U.S.C. § 3014(b)(3), which requires the FTC to refrain from selling or disposing of seized property for which an exemption is claimed until the district court determines whether the debtor has an exempt substantial interest in the property. As noted by the magistrate judge in her report and recommendations of June 8, 2005, Namer had no interest himself in the property CopyTek may have owed to Voice of America, Inc. Arguably, the property at issue did not exist, based on CopyTek's answer to garnishment interrogatories that indicated it owed nothing. Even if property belonging to Voice of America, Inc. could have been seized from the third party, the exemption statutes do not apply to corporate holdings. Therefore, § 3014(b)(3) is inapplicable. The FTC was not required to refrain from selling or disposing of property it could either never seize or which would never qualify as an exemption.

The FDCPA requires that notice for a complaint, writ, or other process be given to a debtor "[a]t such time as counsel for the [FTC] considers appropriate, but not later than the time a . . . postjudgment remedy is put into effect." 28 U.S.C. § 3004(c). Thus, the FTC did not have an obligation to advise Namer or the Corporations of the appointment of a receiver at the time the motion was filed on May 31, 2005.

For these reasons, we find that the district court did not err in affirming the magistrate judge's denial of the motions by Namer and the Corporations to vacate the order appointing the Receiver and to declare personal property exempt from seizure.

2. Motion to dismiss on the basis of accord and satisfaction

The district court affirmed the magistrate judge's denial of Namer's motion of July 6, 2005, requesting dismissal of the case on the basis of accord and satisfaction. We find the district court did not err in affirming the denial of the motion.[10]

Accord and satisfaction is a common-law doctrine that "embraces the discharge of an obligation by a debtor rendering, and a creditor accepting, performance different from that the creditor claims due." Fischbach & Moore, Inc. v. Cajun Elec. Power Coop., Inc., 799 F.2d 194, 197 (5th Cir. 1986). "In its most common form, an accord and satisfaction exists as a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute." O'Connor v. United States, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (internal quotation omitted). An "accord" is the parties' bilateral agreement to settle the claim once certain conditions are met, such as the payment of an agreed-upon dollar amount. See Tri-O, Inc. v. United States, 28 Fed. Cl. 463, 470 (1993) (citing Chesapeake & Potomac Tel. Co. v. United States, 654 F.2d 711, 716 (Ct. Cl. 1981)). The "satisfaction" is the performance of that agreement which occurs when the stated conditions are met. Id. "The three elements essential to the confection of a valid accord and satisfaction are: (1) a disputed claim, (2) the debtor's tendering of a sum less than that claimed by the creditor, and (3) the creditor's acceptance of the payment." United States v. Bloom, 112 F.3d 200, 206 (5th Cir. 1997) (footnotes omitted). This Circuit has observed that "mutual consent is an absolute requisite to the formation of a contract of accord and satisfaction." Fischbach & Moore, 799 F.2d at 198.

---

[10] On July 13, 2005, the Corporations also filed a motion for an accounting of the debt. On July 6, 2005, however, the FTC provided an accounting of the debt, including costs, attorneys' fees, prejudgment interest, and the amounts received in payment toward the debt. Therefore, the motion is moot.

Namer has not demonstrated mutual consent between the parties to settle the debt, nor has he shown acceptance by the FTC of the meager amount paid by Namer as satisfaction of the judgment. Indeed, for what little monies have been received by the FTC, the means of collection have always been through continued litigation and the seizure and sale of Namer's assets through the U.S. Marshal's Office. As such, the magistrate judge's denial of Namer's motion to dismiss on the basis of accord and satisfaction and the district court's affirmance of this ruling was proper.

3. Motion to remove attorney for Receiver

On May 31, 2005, the district court appointed the Receiver to assume control over, manage, and investigate the financial affairs of the Corporations as Namer's cojudgment debtors.[11] On June 21, 2005, the district court granted the Receiver's motion to appoint Emile Turner, Jr. ("Turner") as his counsel to assist him in his duties regarding the assets of both Namer and the Corporations. Namer moved the magistrate judge to vacate the order of the district court appointing Turner as counsel to the Receiver, arguing that Turner owed a fiduciary duty to the Corporations and that he violated his fiduciary duty to protect their assets by not determining that they were mistakenly added as cojudgment debtors. Aside from the fact that the magistrate judge lacked authority to vacate an order of the district court, Namer's motion attempted to revisit the district court's decision naming the Corporations as cojudgment debtors, which was affirmed by this Court. FTC v. Nat'l Bus. Consultants, Inc., 376 F.3d 317 (5th Cir. 2004), cert. denied, 544 U.S. 904 (2005). Namer did not move the district court to reconsider or vacate its order appointing counsel to the Receiver. Therefore, this motion is without merit.

---

[11] On June 17, the district court amended this order to include Namer, Inc. as one of the entities for which the Receiver had been appointed and to change the value for which the Receiver would be bonded in accordance with the value of the assets.

4. Motion to stay seizure and sale of assets

The district court affirmed the magistrate judge's denial of Namer's motion to stay the seizure and sale of the Corporations. Although Namer expressly stated his intent to appeal this decision in his notice of appeal, he did not brief the issue. Because "[i]nadequately briefed issues are deemed abandoned," this Court will not consider this claim. United States v. Charles, 469 F.3d 402, 408 (5th Cir. 2006).

5. Employment of a certified public accountant

The district court affirmed the magistrate judge's granting of the Receiver's request for authority to employ J. Edward Perron, Jr., a certified public accountant, to assist him in reviewing the books and records of the Corporations and preparing fiduciary returns on his behalf. Although Namer objected on behalf of the Corporations, he did not have authority to represent the Corporations legally. Nevertheless, the magistrate judge found his objections to be without merit.

Namer expressly stated his intent to appeal this decision in his notice of appeal, but he did not brief the issues. Because "[i]nadequately briefed issues are deemed abandoned," this Court will not consider this claim. Id.

6. Motion for relief from judgment or order[12]

Namer filed a motion for relief from judgment on August 24, 2005. In the motion, he requested that the district court vacate its order of May 31, 2005, appointing the Receiver and the entire judgment against him and the

---

[12] Namer crafted this motion as a motion to dismiss, but cited the provisions of Rule 60(b), which provide for relief from an order or judgment. Although motions to dismiss are governed by Rule 12, because Namer requested the court to vacate its order appointing a receiver and relief from the judgment against him, the district court treated the motion as a Rule 60 motion for relief from judgment.

Corporations.[13] Because Namer's prior motions to vacate the order appointing the Receiver were properly denied, and because he raised no new grounds justifying the modification or termination of the Receiver's appointment, the district court affirmed the magistrate judge's denial of this motion. We agree and turn to Namer's motion for relief from the entire judgment against him.

Rule 60 provides that, on motion, the district court may relieve a party from final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. P. 60(b). "The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Id.; see also Wilson v. Johns-Manville Sales Corp., 873 F.2d 869, 871–72 (5th Cir. 1989) (holding claim under Rule 60(b)(3) brought two years after entry of judgment was time-barred); Gulf Coast Bldg. & Supply Co., 460 F.2d 105, 108 (5th Cir. 1972) (holding claim under Rule 60(b)(1) brought one year after entry of judgment was time-barred). The expiration of the one-year time limit "is an absolute bar to relief from judgment." United States v. Marin, 720 F.2d 229, 231 (1st Cir. 1983).

---

[13] The record indicates that Namer has been repeatedly instructed that he cannot legally represent the interests of the Corporations; he may only appear for himself. The Corporations are represented by counsel designated by the Receiver, who has the only authority to exercise full control and management of the Corporations, including hiring legal counsel to represent their interests. Therefore, to the extent that Namer's motion seeks any relief on behalf of the Corporations as cojudgment debtors, it must be denied.

Namer argues that the judgment against him should be removed pursuant to Rule 60(b)(2), (3), (5), and (6). The district court entered judgment against Namer in November 1991 and added the Corporations as cojudgment debtors in April 2003. Although the magistrate judge and district court denied Namer's motion for relief from judgment on the merits of these claims, we affirm the denial for different reasons. Because Namer brought his motion for relief from judgment over fourteen years after entry of judgment, his claims under Rule 60(b)(2) and (3) are time-barred. Similarly, his claims under Rule 60(b)(5) and (6) must have been made within a "reasonable time"; fourteen years after entry of judgment does not qualify as a reasonable time for application of Rule 60.

D. District Court's Order of March 26, 2006

The district court affirmed the magistrate judge's order denying in part and granting in part the Corporations' motion to enroll Cary J. Deaton ("Deaton") as counsel. Namer retained Deaton to represent the Corporations, pursuant to the court's August 26, 2005 order, allowing representation of shareholders, but not of corporate entities under receivership. The Receiver opposed the motion, arguing that he alone was granted full power by the district court to control, manage, and liquidate the Corporations' assets and that this included the power to retain counsel. The magistrate judge denied Deaton's enrollment as counsel for all of the Corporations except for National Business Consultants, Inc., the only entity not placed under receivership.

Namer appeals this decision and argues that the Corporations are entitled to independent legal representation and that neither the Receiver nor his attorney can provide legal counsel for the Corporations without a violation of the entities' due process rights. Receivers are bound by fiduciary obligations to the court appointing them and to the estates they serve. Namer ignores the fact that the judgment against him and the Corporations as cojudgment debtors is final. The litigation on the merits has long been concluded and all that is left is

the liquidation of assets to satisfy the judgment. Therefore, no due process rights are implicated and, further, Namer has not demonstrated any prejudice to the Corporations by the Receiver's actions. We find that the district court did not err in its findings of March 26, 2006.

## IV. Conclusion

We AFFIRM the judgments of the district court in all respects. We also note that this appeal contained numerous frivolous arguments, "lack[ing] any support in law or the record," that are not proper requests for judicial relief. Chalfy v. Turoff, 804 F.2d 20, 23 (2d Cir. 1986). This Court may impose sanctions if it determines that an appeal is frivolous. FED. R. APP. P. 38. "Although we are particularly cautious in the imposition of sanctions against pro se plaintiffs, such litigants 'are not granted unrestrained license to pursue totally frivolous appeals.'" Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir. 1988) (quoting Clark v. Green, 814 F.2d 221, 223 (5th Cir. 1987)). Therefore, we warn Namer that future frivolous filings will not be tolerated. Should he persist in exploring frivolous appeals, he risks the imposition of sanctions under Rule 38.